[Civ. No. 4721. Third Appellate District.—March 29, 1933.]

CHARLES M. MERRALLS, as Administrator, etc., Appellant, v. STEPHEN F. SLAWSKI, Respondent.

Euler & Subith and Paul A. Tschirgi for Appellant.

Henry O. Wackerbarth for Respondent.

THOMPSON, J. — The cross-complainant, Slawski, recovered judgment quieting title in him to one acre of a tract of land in Los Angeles County to which the appellant sought to establish title. From this judgment the cross-defendant has appealed.

■ It is contended the deed of conveyance to the cross-complainant's one acre of land is invalid and void for the reason that the grantor was mentally incompetent to execute the instrument; that a confidential relationship existed between the grantor and grantee; that the deed was procured by undue influence and that the findings and judgment are not supported by the evidence.

The evidence is conflicting. Temperance Laura Merralls, a widow who was sixty years of age, owned twelve acres of land in lot No. 23 in Lankershim Ranch and Water Company's subdivision of the city of Los Angeles. She had two children, for whom she entertained some enmity. The respondent was a mere acquaintance whom she had known for a brief period of time. August 6, 1925, she made a written agreement to convey one and a half acres of that tract of land to him in consideration of his services in constructing for her on the premises a "garage house", clearing six acres of the land and assisting in "surveying this property for subdivision". This agreement was not recorded until March 1, 1928. The respondent fulfilled his part of this agreement with the exception of helping to

survey the land for subdivision. He built the house at a cost to him of $400. He cleared the land, including the removal of one hundred tons of rock, at an expense to him of $150. He waived his right to a conveyance of one-half an acre of the property on account of his failure to help survey the land. He testified that the one acre of land which was subsequently conveyed to him was then valued at five or six hundred dollars. The consideration for the deed may therefore not be deemed to be inadequate. It does not appear just when the services in fulfillment of the contract to convey the real property were performed by the respondent. Some time after the execution of the contract Mrs. Merralls obtained a loan of $2,000, which she secured by a mortgage on the entire tract of land. The respondent explained that he did not promptly demand a deed to his one acre of land because he expected to secure the conveyance thereof free of encumbrance. The inference is that he expected the grantor to satisfy the mortgage and give him clear title to his one acre of land. In February, 1929, Mrs. Merralls fell and broke her hip-bone. She was confined to a hospital for some time while she was recovering from this injury. Learning of this fact, the respondent procured the execution of a deed to the one-acre tract of land pursuant to the former contract, in which instrument the performance of the services and the expenditure of money by him were recited as consideration for the conveyance of the land. The deed was presented February 19, 1929, to the grantor at the hospital by the respondent and a notary public by the name of Roberts, before whom it was duly executed. It was then delivered to the grantee and recorded. Upon petition subsequently filed, and without opposition thereto, the probate court adjudged Temperance Laura Merralls to be incompetent and on March 27, 1929, appointed the Security-First National Bank of Los Angeles guardian of her estate. This suit was subsequently commenced to quiet title to the entire tract of land above referred to. The respondent was the sole party defendant in that suit. He admitted the allegations of the complaint with respect to the entire tract of land except the one acre thereof to which he claimed title by deed as above recited. In a cross-complaint he set out the circumstances incident to the securing of his conveyance of this one acre of land and asked the court to quiet

title thereto in him. Findings were adopted in accordance with the allegations of the cross-complaint. The court determined that a relationship of confidence did not exist between the grantee and the grantor at the time of the execution of the deed; that the conveyance was not procured by undue influence; that the consideration therefor was fair and adequate; that the grantor was not incompetent to execute the conveyance, and that the deed to the respondent is valid and binding. Judgment was rendered accordingly.

There is a conflict of evidence respecting the competency of the grantor. The evidence is entirely satisfactory and convincing in support of the finding that a relationship of confidence did not exist between the grantor and the grantee. It is equally apparent that the deed was not procured by the undue influence of the grantee. There is also substantial evidence to support the finding that the grantor ''was in full possession of her mental faculties and knew and understood what she was doing and the effect of her actions in regard thereto''. In other words, the record contains substantial evidence that she was mentally competent to execute the deed.

Doctor Bowers, who attended Mrs. Merralls while she was confined in the hospital for treatment for the fractured hip, testified that in September, 1929, she was suffering from arterio-sclerotic dementia, which had progressed to a degree, according to his opinion, which rendered her incompetent. He said this affliction was progressive in its character and usually slow in its progress, consisting of a hardening of the arteries ultimately resulting in failure to nourish the brain by means of adequate blood supply and that mental deterioration gradually follows. Arterio-sclerosis is usually recognized as an affliction of old age. It may be aggravated by disease or dissipation. It may be evidenced by general debility, atrophied muscles, poor circulation, low temperature, loss of appetite, impaired memory, rambling conversation and mental and physical exhaustion. It is said that the true arterio-sclerosis frequently causes neuralgia of the heart or angina pectoris, which is a common cause of death. It is apparent that the mere existence of arterio-sclerosis does not render a person mentally incompetent. The effect of this disease upon the faculties of the mind depends upon its flagrancy and the degree to which it has

progressed. Probably most old people suffer to some extent from hardening of the arteries. Many who suffer from angina pectoris or arterio-sclerosis retain their mental faculties to the end of life. The question for solution in the present case is not whether the grantor was afflicted with arterio-sclerosis, but rather, had that disease progressed to an extent that her mind had become so deteriorated she was incompetent to execute the deed of conveyance which is involved herein?

Doctor Bowers is the only expert witness who testified regarding her mental incompetency. Upon the contrary, Jessie Guilloz, who had been her intimate friend for twenty years, testified that Mrs. Merralls was competent to transact business. Mr. Dunkley, an agent for Marsh & Company, which firm loaned the money which was secured by a mortgage on the premises, visited her at the hospital in March after the execution of the deed, and conversed with her regarding the transaction in which his firm was interested. He said she was then "perfectly rational".

In view of the fact that Mrs. Merralls was a widow of considerable wealth and possessed of various properties; that for many years she had transacted all of her own business affairs; that a prominent financial institution had made loans of money to her upon real estate security without questioning her competency; that with the exception of Charles Merralls, the grantor's son, who said that he thought his mother was incompetent because "she was easily influenced in the transactions of real estate affairs", no acquaintance or individual, other than Doctor Bowers, testified to circumstances or conditions intimating that she was incompetent; that the execution of the deed was in strict accordance with the specific provisions of her former contract for conveyance, which was made by her four years previous thereto, and that the consideration for the property was apparently fair and adequate, we are unable to say there is not an abundance of evidence to support the findings and judgment to the effect that the grantor was competent and that the deed is valid and binding.

■ The burden of proving that a deed was procured by fraud, mistake or undue influence ordinarily rests upon the party who challenges the validity of the instrument. (9 Cal. Jur. 231, sec. 108.) When, in the absence of confiden-

tial relationship, a conveyance of property is made for a fair and adequate consideration between parties who deal at arm's length every presumption is in favor of the validity of the transaction, and the burden is upon him who challenges the competency of the grantor to prove the invalidity of the instrument by a preponderance of the evidence. One may be weak-minded or easily influenced, but these conditions alone are insufficient to warrant the canceling of a deed for incompetency or undue influence. If the consideration for the conveyance is adequate. and the transaction is fair and equitable, and the grantor has sufficient intelligence to understand the nature of the deal, the purpose and effect thereof, and the power to exercise her own free will with relation thereto, the validity of the deed should be upheld. (9 Cal. Jur. 224, sec. 103; *Carleton* v. *Bonham*, 60 Cal. App. 725, 739 [214 Pac. 503].)

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.